Investments. Mr. Warren, forgive me if I mangled that, I apologize. Good morning. Step right up and speak whenever you're ready. My last name is pronounced Warren, but thank you for listening. May it please the court. Bill Warren, I represent a Sacramento-based corporation known as VSP and VSP Labs. VSP Labs, of course, is the plaintiff and appellant in this particular matter. You know, I was set to go to trial on this case in July, June or July of 2019. And the proceedings that took place in the bankruptcy court upended all of those plans. And so it's been a long time coming. Not that time is the same these days as it was back in 2019, but it's been a long time coming. So I appreciate your focus on this. And the issues are broad and complex. I'm going to just focus on a few of them because there's not time to cover all of them. You know, I think the district court's decision is curious. The district court looks at a 2017 Lyft state order, which is something that we were seeking on behalf of VSP Labs in light of the fact that we wanted the ability to seek a set-off against VSP against PFO now that PFO was bankrupt. PFO had a cross-complaint against us, and it was intent on suing my client in state court in Sacramento. And so the purpose of reaching a deal with Hilaire Capital, which is a California corporation, was to live to stay in order to present our case against PFO in Sacramento. And if we were going to make that case to a jury successfully, we certainly didn't have the ability to collect money. But we could then get a set-off against whatever PFO could get against us. We entered into a Lyft state order because of those facts, and the Lyft state order is not ambiguous at all. It's very consistent with the circumstance of 2017. It says what it says, and it's clear as day, so long as you abide by the canons of construction or interpretation with respect to unambiguous contracts. The district court, its decision looked at that 2017 Lyft state order, viewed it as a contract, and in many ways it was. It was a release, a stipulated release and order, and determined that the bankruptcy court had jurisdiction because of our assent to it in 2017 based on that one release. And that is simply contrary to California law, and it's actually contrary to the law of the Fifth Circuit. And the reasons for that are because the circumstances of the 2017 Lyft state order were very circumscribed and limited. And in 2019, when the court used that particular document to convert related to jurisdiction upon the bankruptcy court, it did so and also said the bankruptcy court did not need to issue findings and recs, and it found that we had consented to the bankruptcy court's jurisdiction regarding the disputes that arose in 2019. And we hadn't consented to the bankruptcy court's jurisdiction for anything other than the Lyft state order. And so it's critical to understand what the Lyft state order meant, and it's also critical to understand that the district court's determination that the bankruptcy court could issue an order and take control and dismiss the actions that are still, frankly, pending in Sacramento, was based on something we did in 2017. And that our consent in 2017 somehow conferred consent upon the bankruptcy court to not issue findings of facts and recommendations of law to the district court, but to actually seize the jurisdiction of that particular issue and cause that particular case to be dismissed. That particular decision is in violation, as I said earlier, of a number of laws. Mooney, the case of Mooney, which is cited throughout our brief as one of them, in that particular action, Mooney of Texas filed bankruptcy in 1969. There was a number of claims that were pending against Mooney. Mooney was purchased thereafter by Mooney of New Jersey, and two, three years later, two individuals died in a plane crash in California. And the court looked at that and said, look, the bankruptcy court's orders in 1969 or 70 have nothing to do with this new action. And the bankruptcy court did not have jurisdiction to take that action and dismiss it. The same is the case here. The bankruptcy court, number one, as the district court eventually found and disagreed with the bankruptcy court, was not dealing with core proceedings under 28 U.S.C. 1334B and or 28 U.S.C. 157. They weren't core proceedings. They were non-core proceedings. And therefore, the bankruptcy court could do nothing but issue findings of fact and issues of law. And the way that the district court got around that particular fact is it said, well, you consented to the bankruptcy court's jurisdiction. And to say we consented to the bankruptcy court's jurisdiction is in violation of all that related to jurisdiction means in bankruptcy court parlance, and it's also in violation of the holding of Mooney and cases like that. So I think that's one of the fundamental problems with the district court's determination. And I think the 2017 lift-stay order cannot be used to create jurisdiction for cases that we didn't even know existed. The language in the lift-stay order that you point to that you think, you said it was unambiguous. So is there language in it that you can point to for me that sort of unambiguously makes the point that you're trying to make here? And I'll tell you why I'm asking. It's just because this is a complex case with many different parts to it, and I just want to make sure I understand what you're relying on in the lift-stay order. Well, the language of the lift-stay order is pretty clear. There's a proviso that says provided that, and there's a number of things that take place after that proviso, and the district court talked about the proviso. At the very end of the lift-stay order, there's language that says that my client, VSP Labs, will do nothing other than seek in the context of what it was trying to do, obtain a set-off against PFO, that amount, and that it will not seek damages for the claims that we're talking about against Hilaire. And that's what Hilaire was actually asking for at the time. Hilaire, if you look at the record, Hilaire simply wanted clarification that VSP was seeking set-off from PFO and not from Hilaire. And here's the point. Based on its ownership of PFO's cross-complaint, based on its ownership of PFO's cross-complaint, and that's in the record on appeal on page 779 through 81, also on page 1455, also on page 1464. So the circumstances of the lift-stay order are critical. And it's also critical, before I even get to the language of the lift-stay order, it is mandatory under Fifth Circuit law that federal courts abstain from jurisdiction when a number of things are in place, and all of those things are in place here. Number one, it can't be a court proceeding. The jurisdiction of the court cannot extend further than what is given by 1334B. That's clearly the case here, and the district court has confirmed that. And every single element that's set forth in our brief with respect to federal abstention is present. The case is filed in Sacramento. I've actually opened and taken a deposition of Hilaire's person most qualified. That's a phrase we use in California. I'm not sure it's the same in Texas. But we had a person most knowledgeable, a person most qualified deposition. We had a pending motion to amend our complaint to add claims against Hilaire. Those claims were against Hilaire and only Hilaire. There's one footnote to that. But we filed a claim for intentional interference with contract and aiding and abetting fraudulent transfer. Now, the district court got hung up on the fact that we have an unfair competition case or claim that's alleged against both PFO and Hilaire. But in California, unfair competition does not confer any damages upon a prevailing party. You can get injunctions and those kinds of things. But you've got to remember, PFO is a defunct entity. PFO is out of money. Hilaire gave PFO $10 million. Hilaire did not produce documents that we had been seeking for months. And we eventually got a court order from the court in Texas or in California that said, you've got to produce these documents. At or around the same time, the trustee was issuing decisions here in Texas stating that while Hilaire was not named, Hilaire was engaged in bad conduct. And so the point is in 2017, not only did we not know, there was no way we could know. And, in fact, it wasn't until 2019 when a motion was granted by us, a motion to compel, was granted by the court in Sacramento that we were able to get these documents. So what's important about all that? Well, federal abstention is mandatory. Comity demands it here. We've got a case against a California corporation. We've got a case being brought by a California corporation. The claims are California claims. They're premised on California law. You have to look, has the case been commenced? Yes. We filed a motion to amend. I responded to the superior court's request to give that judge a brief rundown of what was going on in Texas and whether or not it would have any impact on the prosecution of our actions against Hilaire in California. If at all, we filed a brief, and that's what touched off the filings by opposing counsel, which ultimately ended in my law firm being sanctioned, which made no sense. It made no sense because of a number of different things, some of which I've touched upon here today. I spent a lot of time in the last three or four days reading her briefs. I think they're actually pretty clear and thorough. It's one of the more broad palettes for appellate argument that I've ever had occasion to do. It's a very complex case. I certainly have lots of regard for the bankruptcy court in Texas, lots of regard for the district court in her analysis, although I disagree with it quite strongly. So you want the sanctions reversed or vacated? Yeah. So what is the cleanest path in your mind to reaching that result? Because, I mean, this is a thicket of very difficult issues. Well, yeah, I agree with you, Your Honor. Well, I think with respect to the sanctions, it's the least of my concerns, frankly. I'm concerned about it because it's legally wrong. But I'm not down here because we were sanctioned $50,000 or to pay the legal fees of the ---- All right, fair enough. Well, I'll amend my question. What is the cleanest path to getting the relief that you want? The cleanest path is federal abstention, in my mind. Because even if you ---- I mean, I think you need to go through the thicket of related to jurisdiction. I think you need to go through the canons of construction as it pertains to the nature of that release. I think you need to go through the choice of law issues that are associated with the background facts here. Because under California law, and Fifth Circuit authority confirms this, California law applies here. The cases cited by Allaire are inopposite. They don't deal with choice of law provisions. They don't apply here. The cases that we've cited in our brief apply here. Under California law, there is a provision, CCP code section out there that we all use all the time. It's 1542. And it specifically says that under California law, you cannot release, it's impossible to release claims that are not known to you at the time you sign the release. It's impossible. It's legally impossible. Almost every release that I've ever worked on for clients in California in the last 30 years has included a 1542 waiver. All practitioners in California include a 1542 waiver because any release that's signed without it doesn't release unknown claims. In 2017, when we signed the release that the district court is now relying upon, there's no 1542 release despite the fact that California law applies here. And there's legally no way to have released what the court is now saying we've released. But when the court conducted its analysis, it simply looked at what happened in 2017 without assessing the various things that are essential to the interpretation of any contract. If you look at the law in the Fifth Circuit, it's the same as the law in California, these universal principles of construction.  The district court didn't do that in assessing what the contract meant. A contract, of course, can be unambiguous, but it still needs to be informed by the circumstances and the intent of the parties. The district court did not look at the intent of the parties. Despite the fact that she's called upon to do so, the wise court, 58F3R19193196, it's cited in our brief. The district court ignored the circumstances of the release. And this court states that contracts cannot be interpreted in a vacuum. Hohenstein v. SMH382F2nd530. Also, Gonzales says the same thing. Mr. Warren, your red light is glaring, but we'll see you back again soon on rebuttal. Appreciate it. All right, Mr. Drabble. Counsel for the appellees, step right up. Thank you, Your Honor. May it please the Court. My name is Bill Drabble, and I represent the appellees to whom I'll refer as Hilaire. This court should not relieve VSP from the consequences of its own choices merely because they now seem ill-advised. VSP chose not to challenge the bankruptcy court's jurisdiction until after the stay order became final in 2017, so the doctrine of res judicata bars its collateral attack. VSP chose to agree to the language in the stay order, which the bankruptcy and district courts correctly interpreted to preclude VSP from pursuing its claims against Hilaire in the California action. VSP chose to defy the bankruptcy court's orders and attempt to pursue those claims anyway. Because parties cannot judge for themselves that orders are void and need not be obeyed, the bankruptcy court did not abuse its discretion in sanctioning VSP. I plan to limit my presentation this morning to those three points, as my opposing number has recognized there are several on this appeal and Hilaire is not waiving its others. But I'll begin with the only preserved point of error, which is the bankruptcy court's jurisdiction. In its briefing, VSP is conflating two separate sets of orders in an attempt to avoid the doctrine of res judicata. The first is the stay order, which the bankruptcy court entered in 2017. VSP did not timely appeal, and it became final in 2017. That is the order that contains the language stating that VSP may not recover on account of any claims that have been or could have been asserted in the California action. Importantly, the bankruptcy and the district court both held that it is the stay order that bars the claims. The other set contained the five orders entered in from 2019, from which VSP did timely appeal. All those orders did was interpret and enforce the stay order. And if VSP, as it has contended, is only challenging the bankruptcy court's jurisdiction to enter those five orders, then this appeal is an easy one. The Supreme Court held in Local Loan Company v. Hunt and then reaffirmed in Travelers' Indemnity Company v. Bailey that bankruptcy courts, like every other federal court, have the jurisdiction to interpret and enforce their own orders. And that's true regardless of whether it would have had jurisdiction over the original dispute. This argument that VSP raises that orders must be interpreted to conform to the court's jurisdictional grant was considered and expressly rejected by the Supreme Court and Travelers. Instead, the Travelers' Court said that courts should interpret their orders according to their own terms, and any argument that they cannot or must be given a narrowed construction due to some jurisdictional flaw is nothing more than an impermissible collateral attack. So if VSP wants to challenge the bankruptcy court's jurisdiction to adjudicate its claims, it has to attack the stay order itself. But again, Travelers stands in the way. The Supreme Court said that res judicata would bar any such challenge. The need for finality forbids a court called upon to enforce its prior orders from reassessing whether it had jurisdiction to enter that order in the first place. At this late date, the only way to assert a jurisdictional challenge is through Rule 60b-4. VSP must first set aside the stay order as void under that rule, but that would require VSP to not only show that the bankruptcy court lacked jurisdiction, it would have to show that the bankruptcy court lacked even an arguable basis for jurisdiction. In other words, the court must have committed a clear usurpation of power. VSP cannot make that showing because it is at the very least arguable that the bankruptcy court had related to jurisdiction. Section 1334 grants the court's jurisdiction over all civil proceedings arising under the Bankruptcy Code and all civil proceedings arising in or related to a bankruptcy case. And this appeal concerns that third jurisdictional grant related to jurisdiction. And as the Supreme Court made clear in Celotex v. Edwards, related to jurisdiction is not limitless, but it is expansive, and it will even encompass claims between non-debtors over non-estate property when those claims could conceivably affect the bankruptcy estate. So why don't you articulate for me why there is related to jurisdiction here? Why would it conceivably affect the estate? The claims against Hilaire could conceivably affect PFO's estate in three ways. The first is those claims arose out of the joint conduct, I'll say purported joint conduct, of Hilaire and PFO. This court recognized in Enright Wood that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, the bankruptcy court will have jurisdiction over all claims. And here what they've alleged in their proposed amended complaint is an interconnected web of interest between Hilaire and PFO. That's how the bankruptcy and district courts described it. And that's true. VSP has alleged that Hilaire effectuated a de facto takeover of PFO and then used that company for its own purposes. And despite this argument that the claims are independent, proving wrongdoing by PFO is actually prerequisite to any recovery from Hilaire. VSP cannot prevail on its claim that Hilaire tortuously interfered with the agreement without first showing that PFO breached the agreement. And likewise, VSP cannot prevail on its claim that Hilaire aided and abetted a fraudulent transfer without first showing that PFO actually made that fraudulent transfer. That's the first way that this could conceivably affect the bankruptcy estate. The second way the claims could affect the estate is it may reduce the estate's liabilities. VSP has asserted different claims against Hilaire than it has against PFO, but the damages are the same. From both defendants, VSP is seeking to recover the loss of the economic benefits from this underlying agreement. Now, needless to say, the one satisfaction rule would preclude VSP from recovering those damages twice. It can't recover them once from Hilaire and then once from PFO. So if VSP were to assert its claim against Hilaire, were to prevail on that claim and collect damages from Hilaire, then PFO would be entitled to a credit for the damages that Hilaire pays, thus reducing the estate's liability. And the final way that related to jurisdiction exists is because the claims against Hilaire may result in contribution claims against PFO. This Court recognized in Passmore that contingent contribution claims are enough to support the exercise of related to jurisdiction. And if, again, VSP were to assert its claims against Hilaire, prevail on those claims, and Hilaire pays the entire amount of the judgment, then California law would give Hilaire a contribution claim against PFO for half the amount paid. So for those three reasons, related to jurisdiction existed. Now, the only argument in response to that confuses liability with recoverability. VSP, as I said again today, acknowledged that PFO doesn't have the money to pay any of these claims and it's unlikely they would, but that's not the test. VSP has cited no case, and Hilaire has found none, in which any court has held that related to jurisdiction did not exist simply because a bankrupt debtor is unlikely to pay the claim. The test is whether the claim could conceivably affect the estate, not whether the estate is likely to pay on that claim. So for those reasons, the bankruptcy court, at the very least, arguably had related to jurisdiction. The stay order is not void under Rule 60b-4, and the bankruptcy court had the jurisdiction to interpret and enforce its orders. I would like to briefly address the abstention point. Section 1334C does require the bankruptcy court to abstain from hearing certain non-core matters, and we acknowledge that the claims against Hilaire are a non-core matter. But 1334C requires something else, a timely motion by a party, and you will scour the record and find no motion by VSP to abstain, much less a timely one. Obviously they agreed to the estate order in 2017 without contesting the bankruptcy court's authority or ability to adjudicate the claims against Hilaire. In fact, the first time that Section 1334 was even cited by VSP was in its opening brief in this court. They didn't even raise the point in the district court as well. So the abstention argument fails on the merits and then was waived for failing to preserve error, like every other argument that VSP has made except for jurisdiction. I would like to turn to the interpretation of the stay order. The bankruptcy court and district court's interpretation was correct. As we have all acknowledged here, agreed orders such as the stay order are interpreted as though they were contracts. You have to determine their scope by looking in their four corners and not by what may satisfy one of the party's purposes. And here the language is clear and unambiguous. Any claims means exactly what it says. Any, when used in the plural as in the stay order, means every, without limitation. There's nothing else in the stay order that limits the breadth of that term, so the only reasonable interpretation is that the stay order covered every claim that VSP could have asserted against Hilaire in the California action without limitation. That's regardless of whether VSP knew about the claim when it agreed to the stay order in 2017 and regardless of whether the claim was based on the purchase of PFO's counterclaim or on Hilaire's purported own conduct. VSPs, all their arguments to the contrary have been waived, and in any event they would fail. In the district court, VSP did not argue that the bankruptcy court had misinterpreted its order. You will not find that in either of the issues presented in the district court, and the district court brief devotes exactly one sentence to an assertion that the bankruptcy court's interpretation was wrong. That's one sentence without any arguments or authorities whatsoever, and that's not enough to preserve error under this court's rules. VSP asserted again today that California law should have guided the bankruptcy court in the interpretation of its orders. The problem is that VSP did not raise that argument in either the bankruptcy court or the district court. The first time it cited this California statute that it contends bars general releases of unknown claims was in its opening brief in this court. And even if this argument had not been forfeited, it would fail on its merits. Three other circuits, the Sixth, Ninth, and Eleventh, have said unanimously that when interpreting an agreed order, the district court should look and borrow the rules of construction from the forum state, which would have been Texas. There are no cases that VSP has cited to the contrary. So VSP also contends that it did not know about the claims and thus did not intend to release them when it agreed to the stay order. But what VSP subjectively intended to accomplish with the stay order is absolutely irrelevant. Courts do not interpret any legal document, especially a court order, by looking to the party's subjective intent. And I would quote from Travelers, the Supreme Court made this clear, saying, if it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the party's subjective intent, it is all the clearer that a court should enforce a court order, a public governmental document, according to its unambiguous terms. The stay order does not preclude VSP from recovering on account of any known claims. It prohibits VSP from recovering on account of any claims at all. Finally, and I'd like to conclude by stating that the bankruptcy court did not abuse its discretion in sanctioning VSP. The bankruptcy court awarded Hilaire its attorney's fees, which is a classic example of civil contempt, and there are three elements to civil contempt. You have a court order in effect. That court order requires or prohibits conduct by a party. The party violates the order. All three elements are satisfied here. The stay order precluded the claims against Hilaire, and then the enforcement order removed any doubt about the scope of the stay order. The bankruptcy court had before it the very same counterclaim that VSP was attempting to file in state court. The bankruptcy court said, no, this is barred by my stay order. There was no room for dispute at that point. Now, VSP didn't agree with either of those orders, but rather than waiting to get them overturned through a process of orderly judicial review, it decided to take the position they were void and asked the California state court to ignore them. And its brief in the California state court is very clear on that. They said that even if the bankruptcy court fails to change its decision, that decision in no way forecloses the California state court's exercise of its exclusive jurisdiction to adjudicate Hilaire's wrongful conduct against VSP under California law. VSP then twice urged the state court to allow it to file its amended complaint. The very same complaint that the bankruptcy court had already held was barred by the stay order. VSP's violations of the court's orders are as clear as they are startling. Now, VSP raises two arguments in its brief, both of which have been forfeited like most of its arguments in this appeal. In the district court, VSP argued that sanctions were inappropriate because either the court lacked jurisdiction or because Hilaire had withdrawn its request for sanctions. VSP doesn't assert either of those arguments here and for very good reason. The first is contrary to the law and the second is contrary to the facts. So VSP manufactured two new arguments. The first is that it's acting in good faith. Good faith is not a defense to civil contempt. The Supreme Court made that clear in McComb v. Jacksonville Paper Company and then Taggart v. Lorenzen. Instead, the sole issue is whether the party violated the court's order. VSP violated two, the stay and enforcement orders. The second new argument is that VSP was merely responding to the California state court's request for additional briefing. But an inquiry from one court does not give a party the license to violate another court's orders with impunity. In fact, VSP's argument has no logical stopping point. Suppose this court affirms the district court judgment and the California state court asks for an update. Can VSP continue to take the position that the stay and enforcement orders are void and ask the California state court to allow it to pursue its claims? And if not, why not? Why does this court's judgment deserve respect and obedience, but the bankruptcy courts do not? VSP doesn't have any answers to those questions because there aren't any. Instead, the direction is clear. Even if you disagree with the judgment, you're bound to follow it until it's overturned through orderly judicial review. What VSP should have done was tell the California state court about the bankruptcy court's ruling, say. VSP could have told the California state court that it disagreed with those rulings and was seeking reconsideration. It could have even asked for a stay pending that motion for reconsideration and any appeal. But what VSP could not do is ignore the bankruptcy court's orders and pursue the claims anyway. I'm happy to entertain any further questions from the panel. Okay. Mr. Drasner, thanks so much. For those reasons, we ask that you affirm this report's judgment. Thank you. Appreciate it. Your Honors, thank you again for your time. We waived nothing. The section in our brief that deals with those particular assertions by Hilaire is, frankly, excellent. It covers all the territory. It's clear. It's concise. And it demonstrates that those arguments are being made here because there are fatal problems with what happened in the bankruptcy court and with what happened in the district court. And the reason they want to argue waiver is because there is simply no answer to the legal issues with respect to what the bankruptcy court did here in terms of seizing jurisdiction, calling it core until the district court said no, based on a 2017 Lyft state order when the causes of action that we had against Hilaire didn't accrue until 2019. We didn't even know about them. Let me give you one example as to how this waiver argument is really a red herring. It's trying to elevate form over substance. The substance of our waiver of our abstention argument is absolutely in our briefs, and you'll see that on page 14, 15, and 16 of our reply. You'll see us take on this argument that we somehow waived our right to argue federal abstention. There's a case out of the Fifth Circuit that we cited called F. John International Cruise Holdings. It's found at 346 F. 3rd, 552, 560. And it stands for the principle that a court is not bound by how a party labels its motion. Obviously, the relief sought that to be granted or within the power of the court to grant should be determined by substance, not a label. It is right on point here. The substance of our briefing was clear. While the specific phrase, motion to abstain, was not in the caption, VSP wrote this. We request that this court reconsider its May 2, 2019 order that improperly adjudicated VSP's claims against Hilaire and that it aims to bar VSP from pursuing its state law claims against third-party Hilaire in the California Superior Court. That's not all. The motion goes on to state claims against Hilaire are not based on any right created by the federal bankruptcy law. Instead, they are based on state-created rights under California law, and VSP is entitled to pursue its claims against Hilaire in the California action. And that's the record of appeal, page 1148 through 1149. F. John is right on point here. You can't waive jurisdiction in a release. We didn't waive jurisdiction with respect to that release. The release was not read in the context of all those canons of construction or interpretation that you would expect. It was read as if it was in a vacuum. And when opposing counsels stood up and started by saying we should have appealed the 2017 Lyft stay order, we asked for that order. That order said what we wanted it to say. There was no reason to appeal anything. And when I filed what I filed in Sacramento in 2019, I did because the Superior Court asked me to. Yeah, bad faith is required for sanctions. There was no bad faith on the part of my law firm or any lawyers working for VSP on this case. We have got a case against Hilaire that is contrary to what was said here five minutes ago. It is not intertwined with PFO. That case is not intertwined. Even if it were, even if you could argue that this is a related to jurisdiction, the Bankruptcy Court had no right to issue an actual order with respect to a case in California under Mooney and in light of the fact that California law applies and the release cannot waive unknown claims. So with respect to the sanctions, what we did in California was what we did because the court asked us for briefing. And frankly, I was shocked when the court, the Bankruptcy Court in Texas, sanctioned us for that. We have a First Amendment right. I've got a professional obligation to respond to the court in California. I wrote to the court in a way that was measured and focused on what the court was looking for. What's the impact? That case still is on the shelf in Sacramento waiting to be tried against a California corporation with causes of action that are separate completely from PFO, have no bearing on PFO whatsoever. They have to be paid directly by Hilaire when we win this case. I appreciate you taking my time. Counsel, thank you. Thank you both. It is a thicket, as Judge Duncan aptly described it. We appreciate your briefing and your arguments today. The case is submitted, and that wraps up our cases for the week. And the court will stand in recess under the regular order.